# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKLYN FEIST, individually and on behalf of all others similarly situated; and ANGELICA ZIMMER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETCO ANIMAL SUPPLIES, INC.,<br><br>Defendant. | Case No.: 3:16-cv-1369-H-RNB<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASSES FOR SETTLEMENT PURPOSES;**<br><br>**(2) CONDITIONALLY GRANTING PRELIMINARY APPROVAL FOR CLASS SETTLEMENT;**<br><br>**(3) APPOINTING CLASS REPRESENTATIVES AND COUNSEL;**<br><br>**(4) DIRECTING NOTICE TO THE CLASSES;**<br><br>**(5) SCHEDULING FINAL APPROVAL HEARING; and**<br><br>**(6) GRANTING JOINT MOTION TO FILE SECOND AMENDED COMPLAINT**<br><br>[Doc. Nos. 34, 35.] |

On April 20, 2018, Plaintiffs Jacklyn Feist ("Feist") and Angelica Zimmer ("Zimmer") (collectively, "Plaintiffs") filed an unopposed motion seeking provisional class certification, preliminary approval of a proposed class settlement, approval of a proposed dissemination of class notice, and a final approval schedule. (Doc No. 34.) That same day, Plaintiffs and Defendant Petco Animal Supplies, Inc. ("Petco" or "Defendant") filed a joint motion to permit Plaintiffs to file a Second Amended Complaint. (Doc. No. 35.) The Court held a hearing on the motions on June 11, 2018. Mark S. Greenstone appeared for Plaintiffs, while Frederick W. Kosmo, Jr. appeared for Defendant. For the following reasons, the Court grants both motions and sets a schedule for further proceedings.

## Background

**A.  Factual and Procedural Background**

Petco is a major national retailer that primarily sells pet care products and services. Zimmer is a former Petco employee, and Feist is a former Petco job applicant. (Doc. No. 36, Second Amended Complaint, ¶¶ 30–35.)[1] Plaintiffs allege that Defendant obtained and reviewed consumer reports detailing their financial histories after Plaintiffs applied for jobs at Defendant's stores, without first providing Plaintiffs the notice required by the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). (Id. at ¶¶ 30–35, 51.) Zimmer was hired by a Petco store and worked there for roughly five months. (Id. at ¶ 35.) Feist was not hired, allegedly because of adverse information on her consumer report. (Id. at ¶ 33.) Feist alleges that she was not properly notified that Defendant would be reviewing her consumer report, and was thus "deprived of an opportunity to review and challenge the report upon which . . . her denial of employment was based." (Id.)

---

[1]  Federal Rule of Civil Procedure 15(a)(2) permits a party to file amended or supplemental pleadings at any time before trial "with the opposing party's written consent." The Court accordingly grants the parties' joint motion to permit Plaintiffs to file a Second Amended Complaint, (Doc. No. 35), and accepts the tendered Second Amended Complaint. (Doc. No. 36.)

On May 5, 2016, Plaintiffs filed this class action in the San Diego County Superior Court, (Doc. No. 1-2), asserting three different claims for violations of FCRA, and seeking to represent a class of "All persons regarding whom Defendant procured or caused to be procured a consumer report for employment purposes during the period from May 1, 2014 through December 31, 2015" ("Disclosure Class"), including a proposed subclass of "[a]ll persons regarding whom Defendant took adverse action subsequent to procuring a consumer report and did not receive a pre-adverse action notification letter during the period May 1, 2014 through December 31, 2015" ("Adverse Action Subclass"). (Doc. No. 36 at ¶ 54.) On June 6, 2016, Defendant removed the action to this District on the basis of federal question jurisdiction. (Doc. No. 1.) Defendant moved to dismiss the complaint for failure to state a claim and lack of standing on July 15, 2016, (Doc. No. 7-1), but the Court denied the motion on November 22, 2016. (Doc. No. 16.) Defendant answered the complaint on December 22, 2016. (Doc. No. 17.)

On January 18, 2018, the parties notified the Court that they had reached a global settlement following mediation before the Hon. Leo S. Papas (Ret.), a former Magistrate Judge of this Court. (Doc. No. 28.) After further negotiations, Plaintiffs moved for preliminary approval of the parties' class settlement on April 20, 2018. (Doc. No. 34.)

**B.  Proposed Settlement**

Under the proposed settlement, Defendant will pay $1,200,000 to establish a non-reversionary settlement fund to resolve the litigation. (See Doc. No. 34-3, Proposed Settlement, PageID 383.) The settlement allocates $793,274.74 to participating class members, $10,000 as an incentive award for the lead Plaintiffs, $300,000 for attorney fees, $15,725.26 to cover costs of suit, and $81,000 to pay a settlement administrator. (Id.) The estimated 37,279 members of the Disclosure Class will each receive roughly $20, while the estimated 52 members of the Adverse Action Subclass will receive an additional $150. (Doc. No. 34-1 at PageID 339.) Defendant will provide a list class members to the settlement administrator, who will then mail notice to each class member after making efforts to obtain updated addresses. (Doc. No. 34-3 at PageID 394–95.) Non-objecting

class members will be paid automatically, without need to file a claim. (Doc. No. 34-1 at PageID 339.) Any unclaimed funds will be donated to a mutually agreeable cy pres recipient. (Doc. No. 34-3 at PageID 383.) In exchange for these payments, Defendant will be released from "all claims based on the failure to provide a proper disclosure and/or obtain a proper authorization and/or provide a pre-adverse action notification letter, in connection with an employment-related background check under the FCRA and all related, analogous or corresponding federal or state laws, which any Participating Class Member has ever had, or hereafter may claim to have, against the Released Parties related to consumer reports procured by Defendant during the period from May 1, 2014 through December 31, 2015." (Id. at PageID 388, 402–03.)

## Discussion

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the Court must first assess whether a class exists, and second, determine whether the proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Id.

**I. Class Certification**

In the present case, Plaintiffs seek to certify one class and one sub-class pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement only. (Doc. No. 34-1 at PageID 363.) The class includes all individuals who applied for jobs at Petco stores during the class period, and for whom Petco reviewed consumer reports. (Doc No. 36 ¶ 54.) The subclass includes those members of the Disclosure Class who were subject to an adverse employment action as a result of the information contained in their consumer reports. (Id.) A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); see Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Id.

### A. Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs estimate that the Disclosure Class exceeds 37,000 members, while the Adverse Action Subclass contains roughly 52 members. (Doc. No. 34-1 at PageID 339.) Accordingly, the proposed classes meet the numerosity prerequisite in this case. See, e.g., Nunez v. BAE Sys. San Diego Ship Repair Inc., 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017) ("Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." (citation, brackets, and quotation marks omitted)); Bee, Denning, Inc. v. Capital Alliance Group, 310 F.R.D. 614, 624 (S.D. Cal. 2015) (same); Gomez v. Rossi Concrete, Inc., 270 F.R.D. 579, 588 (S.D. Cal. 2010) (same).

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Dukes, 131 S. Ct. at 2551). Here, whether Defendant provided the proposed class members adequate FCRA notice implicates numerous common questions of law and fact. See, e.g., Singleton v. Domino's Pizza, LLC, 976 F. Supp. 665, 675 (D. Md. 2013) (finding commonality requirement satisfied for FCRA settlement class based on questions of "where [Defendant] violated the FCRA by using [a form] to obtain consent from prospective and/or current employees to procure consumer reports for employment purposes"); Roe v. Frito-Lay, Inc., No. 14-cv-00751-HSG, 2016 WL 4154850, at *3 (N.D. Cal. Aug. 5, 2016) ("The Court

5

3:16-cv-1369-H-RNB

find that the proposed class satisfies the commonality requirement because, at a minimum, Defendant's alleged policies and practices concerning provision of a pre-adverse action notice as required by the FCRA implicate class members' claims as a whole."). Accordingly, the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Here, Zimmer suffered the same alleged injury as the Disclosure Class (Petco reviewed her consumer report without providing adequate FCRA notice), while Feist suffered the same alleged injury as the Adverse Action Subclass (her offer of employment was rescinded because of the information contained in her consumer report, and she was not given an opportunity to correct any false information in the report). The Court accordingly finds the typicality requirement satisfied.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there do not appear to be any conflicts of interest between Plaintiffs and the absent class members. Plaintiffs and their counsel have vigorously prosecuted the interests of the class, and class counsel has extensive experience in complex class action litigation. (See Doc. No. 34-2, Greenstone Decl. ¶¶ 12–17.) Accordingly, Plaintiffs and their counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiffs have met all of the requirements of Rule 23(a).

**B. Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual

6

3:16-cv-1369-H-RNB

find that the proposed class satisfies the commonality requirement because, at a minimum, Defendant's alleged policies and practices concerning provision of a pre-adverse action notice as required by the FCRA implicate class members' claims as a whole."). Accordingly, the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Here, Zimmer suffered the same alleged injury as the Disclosure Class (Petco reviewed her consumer report without providing adequate FCRA notice), while Feist suffered the same alleged injury as the Adverse Action Subclass (her offer of employment was rescinded because of the information contained in her consumer report, and she was not given an opportunity to correct any false information in the report). The Court accordingly finds the typicality requirement satisfied.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there do not appear to be any conflicts of interest between Plaintiffs and the absent class members. Plaintiffs and their counsel have vigorously prosecuted the interests of the class, and class counsel has extensive experience in complex class action litigation. (See Doc. No. 34-2, Greenstone Decl. ¶¶ 12–17.) Accordingly, Plaintiffs and their counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiffs have met all of the requirements of Rule 23(a).

**B. Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual

members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These factors are referred to as the "predominance" and "superiority" tests. See Hanlon, 150 F.3d at 1022-23. Rule 23(b)(3)'s requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97). If the parties seek to certify a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." Id. at 620 (internal citations omitted).

### 1. Predominance

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). This analysis requires more than proof of common issues of law and fact. Id. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (internal quotation omitted). An employer's policy that uniformly applies to class members is a permissible factor for consideration under Rule 23(b)(3). Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg.), 571 F.3d 953, 957 (9th Cir. 2009).

Here, the significant common issue in this case is whether Defendant provided adequate FCRA notice to the class members before obtaining their consumer reports. Moreover, the legal remedies for the class members and subclass members are the same—monetary damages, which differ only based on whether adverse action was taken as a result of the information in the class members' consumer reports. Accordingly, the Court concludes that the issues common to the proposed class are significant and predominate over individual issues. See Singleton, 976 F. Supp. 2d at 677 (predominance satisfied for FCRA settlement class where the "'Applicant Class' would have to show that [Defendant]

violated FCRA by procuring or causing to be procured a consumer report based on a . . . form that prospective applicants complete" and the "'Adverse Action Class" would need to establish hat [Defendant] took an adverse employment action against prospective and current employees without sending a pre-adverse action notice and/or copy of the consumer report on which the adverse action was taken").

### 2. Superiority

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Moreover, any class member who wants to pursue an individual claim may elect not to participate in the settlement agreement. Accordingly, the superiority requirement is met here.

For the foregoing reasons, Plaintiff has satisfied the requirements of Rule 23(b)(3). Thus, the Court grants preliminary certification to the proposed class. The Court, however, may review and alter this finding at the final approval hearing.

## II. The Settlement

Rule 23(e) requires the Court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id. In addition, the settlement may not be the product of collusion

among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

Given that some of these factors cannot be fully assessed until the Court conducts the final approval hearing, "'a full fairness analysis is unnecessary at this stage.'" Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, at the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate. See 4 William B. Rubenstein et al., Newberg on Class Actions § 11:25 (4th ed. 2002) (citations omitted); see also Alberto, 252 F.R.D. at 666 (citation omitted). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Seattle, 955 F.2d at 1276. Additionally, the Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).

After reviewing the proposed settlement in light of the above factors and the current stage of the litigation, the Court concludes that preliminary approval is appropriate. The proposed settlement appears to be the result of serious, informed, and non-collusive negotiations. See, e.g., Tijero v. Aaron Bros., Inc., C 10-01089-SBA, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013). The parties reached this settlement after months of investigation and extensive discussions before an experienced mediator. (Doc. No. 34-2 at ¶¶ 6–9.) Class counsel has extensive experience in wage and hour class actions and represents that continuing to litigate the case would pose significant risks for the class. (Id. ¶ 10–11.) The estimated total value of benefits to the class is $793,274.74, with each class member receiving one of two compensation levels based on whether they were subject to an adverse employment action. (Doc. No. 34-1 at PageID 339.) The average recovery for each of the roughly 37,000 Disclosure Class members will be $20, while the average

recovery for the roughly 52 Adverse Action Subclass members will be $170. (Id.) Additionally members may opt out if they believe the settlement does not adequately compensate them.

The request for attorney's fees and costs of up to $300,000, is within the permissible range of acceptable attorneys' fees in Ninth Circuit cases. See also Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"). Additionally, the proposed incentive awards for the named Plaintiffs of $5000 each appears reasonable given their efforts in this litigation. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement).

The parties may designate a cy pres recipient for any unclaimed funds so long as it qualifies as "the next best distribution" to giving the funds to class members. Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). "There must be a driving nexus between the plaintiff class and the cy pres beneficiaries." Id. (citation omitted). As such, a cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]" Id. (quotation marks and citations omitted). Here, the parties have not yet named their proposed cy pres recipient. Although the Court will still grant preliminary approval in spite of this oversight, the Court warns the parties that this approval is conditional on the parties submitting a cy pres recipient that complies with the Ninth Circuit's criteria within **14 days of this Order**.

For the foregoing reasons, the Court conditionally grants preliminary approval of the proposed settlement. The Court, however, reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing, and reserves the right to revoke this approval if the parties do not timely submit a valid cy pres recipient for the Court's approval.

## III. Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), that provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

### A. Content of the Notice

In the present case, the content of the notice is adequate. In clearly understandable language, it provides the following: a description of the lawsuit; a description of the settlement class; an explanation of the material elements of the settlement, a statement declaring that class members may exclude themselves from or object to the settlement; a description that explains how class members may exclude themselves from or object to the terms of the settlement; and a description of the fairness hearing. (See Doc. No. 34-3 at PageID 420–423.)

### B. Method of Notice

The Court also concludes that the proposed method of notice is reasonable. The parties have selected KCC LLC to be their settlement administrator. (Id. at PageID 388.) "No later than five (5) business days after the Settlement Administrator received the Class List from Defendant, the Settlement Administrator will first update all addresses using the National Change of Address System (NOCA) and then mail to all Class Members, via first-class United States Mail, a Notice of Class Action Settlement ('Class Notice')." (Id. at PageID 394.) "At the same time that the Class Notice is sent, the Settlement Administrator

1 | shall establish a Settlement website which shall contain information relevant to Class members[.]" (Id.) "In the event that a Class Notice is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator will re-send the Class Notice to the forwarding address affixed thereto." (Id. at PageID 395.) "If no forwarding address is provided, then the Settlement Administrator will promptly conduct a 'standard search,' sometimes called 'Skip Traces' or 'Credit Header' searches, to locate a better address." (Id.) "If the standard search does not provide a better address or the Class Notice is returned a second time without a forwarding address, the Settlement Administrator shall perform a manual 'in-depth search' to locate a better address." (Id.)

After reviewing the content and the proposed method of providing notice, the Court determines that the notice is adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.

## IV. Scheduling Fairness Hearing

The Court schedules the final approval hearing for **Monday, November 19, 2018**, at **10:30 a.m.** In accordance with the proposed settlement agreement, Defendant must provide an updated class list to the settlement administrator by **July 2, 2018**. The settlement administrator must mail class notices by **July 23, 2018**. Any class member wishing to object to the settlement must do so by **September 24, 2018**, subject to the conditions for extension of time outlined in the settlement agreement. Plaintiff must file a motion for attorneys' fees and any service awards on or before **October 1, 2018**. Plaintiff must file a motion for final approval of the settlement on or before **October 15, 2018**.

///
///
///
///
///
///

## Conclusion

For the foregoing reasons, the Court: (i) certifies the Disclose Class and Adverse Action Subclass for settlement purposes only; (ii) conditionally grants preliminary approval of the proposed settlement; (iii) appoints Plaintiffs as class representatives and their attorneys as class counsel; (iv) directs that notice be provided to all class members as outlined in the settlement agreement; (v) orders the parties to abide by the deadlines outlined in this Order; and (iv) grants the parties joint motion for leave to file an amended complaint.

**IT IS SO ORDERED.**

DATED: June 11, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT