**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKLYN FEIST AND ANGELICA ZIMMER, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br>     v.<br><br>PETCO ANIMAL SUPPLIES, INC., and DOES 1 through 10, inclusive,<br><br>          Defendant. | Case No. 3:16-cv-01369-H-DHB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Date:        November 19, 2018<br>Time:        10:30 a.m.<br>Judge:       Honorable Marilyn L. Huff |

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...........................................................1

II.   FACTUAL AND PROCEDURAL HISTORY ....................................3

III.   THE COURT SHOULD APPROVE THE FEE REQUEST ..................3

    A.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases .................3

    B.   An Award of 25% of the Fund Created Is Reasonable in This Case ...........5

        1.   The Results Achieved and the Benefit Obtained for the Class...........6

        2.   The Risks of Continued Litigation......................................................8

        3.   The Financial Burden of Contingent Fee Representation and the Risk of Nonpayment ....................................................11

        4.   A 25% Fee Award Is Consistent With the Market Rate in Similar, Complex, Contingent Litigation .........................................13

        5.   The Skill Required and the Quality and Efficiency of the Work .....15

    C.   The Requested Fee Is Reasonable Under a Lodestar Cross-Check ...........17

    D.   The Reaction of the Class Supports Approval of the Requested Attorneys' Fees........................................................................................19

IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED......21

V.   THE CLASS REPRESENTATIVE SERVICE AWARDS ARE REASONABLE.................................................................................21

VI.   CONCLUSION................................................................................24

# TABLE OF AUTHORITIES

<u>CASES</u>

*Asghari v. Volkswagen Grp. of Am., Inc.*,
    No. CV 13-02529 MMM (VBKx), 2015 WL 12732462 (C.D. Cal. May 29, 2015)....20

*Bickley v. Dish Network, LLC*,
    No. 3:10-cv-00678-H, 2012 WL 5397754 (W.D. Ky. Nov. 2, 2012)..........................11

*Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...........................................................................5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...........................................................................4

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)...........................................................................20

*Carter v. McDonald's Restaurants*,
    No. EDCV-15-01531-MWF (JCx), 2017 WL 5634300 (C.D. Cal. Mar. 15, 2017).....24

*Cent. R.R. & Banking Co. of Georgia v. Pettus*,
    113 U.S. 116 (1885) ...........................................................................4

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...........................................................................20

*Cifuentes v. CEVA Logistics U.S., Inc.*,
    No. 3:16-CV-01957-H-DHB, 2017 WL 4792425 (S.D. Cal. Oct. 23, 2017) ........*passim*

*Cox v. Clarus Mktg. Grp., LLC*,
    291 F.R.D. 473 (S.D. Cal. 2013) ...........................................................................22

*Domonoske v. Bank of America, N.A.*,
    790 F. Supp. 2d 466 (W.O. Va. 2011)...........................................................................10

*Dreher v. Experian Info. Sols., Inc.*,
    856 F.3d 337 (4th Cir. 2017) ...........................................................................13

*Flores v. Express Servs., Inc.*,
   No. 2:14-cv-03298, 2017 WL 1177098 (E.D. Pa. Mar. 30, 2017) ...............................14

*Ford v. CEC Entm't Inc.*,
   No. 14CV677 JLS (JLB), 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015)............14, 19

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) ..............................................................................17

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*,
   No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. Mar. 26, 2018) .........*passim*

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................................13

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ....................................................................................20

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................6

*In re Amgen Inc. Sec. Litig.*,
   No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)............21

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...............12, 15, 16

*In re Mfrs. Life Ins.*,
   No. 1109, 96-CV-230 BTM(AJB), 1998 WL 1993385 (S.D. Cal. Dec. 21, 1998) ......20

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................12

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
   No. CV-09-5416 DOC (RZx), 2011 WL 280991 (C.D. Cal. Jan. 26, 2011) ...............19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................................4, 5, 12

*In re Xcel Energy Inc. Sec. Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................12

*Johnson v. Midwest Logistics Sys. Ltd.*,
    No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ..............................14

*Lee v. Hertz Corp.*,
    No. 15-cv-04562-BLF, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016) ...........................8

*Lewis v. Cty. of San Diego*,
    No. 13-CV-02818-H-JMA, 2017 WL 6326972 (S.D. Cal. Dec. 11, 2017) .................19

*Mix v. Asurion Ins. Servs. Inc.*,
    No. CV-14-02357-PHX-GMS, 2016 WL 7229140 (D. Ariz. Dec. 14, 2016) ...............9

*Moore v. Aerotek, Inc.*,
    No. 2:15-cv-2701, 2017 WL 2838148 (S.D. Ohio June 30, 2017) ..........................7, 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)........................................................................15, 20

*Nokchan v. Lyft, Inc.*,
    No. 15-cv-03008(JCS), 2016 WL 5815287 (N.D. Cal. Oct. 5, 2016) ...........................8

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .......................................................................................17

*Rhom v. Thumbtack, Inc.*,
    No. 16-CV-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) ....................23

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) .........................................................................................5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................................................5

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ..........................................................................................9, 10, 12

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp. 2d 402 (E.D. Pa. 2010)..........................................................................14

*Silverman v. Motorola Sols., Inc.*,
    No. 12-2339, 2013 WL 4082893 (7th Cir. Aug. 14, 2013)..........................................12

*Smith v. LexisNexis Screening Sols., Inc.,*
    837 F.3d 604 (6th Cir. 2016) .................................................................. 10, 12

*Smith v. Res-Care, Inc.,*
    No. CV 3:13-5211, 2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015) ............................ 14

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ........................................................................ 7

*Syed v. M-I LLC,*
    No. CV 1:14-742 WBS BAM, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016) ........... 5, 14

*Thomas v. FTS USA, LLC,*
    312 F.R.D. 407 (E.D. Va. 2016) .............................................................. 9

*Trustees v. Greenough,*
    105 U.S. 527 (1881) ........................................................................... 4

*Vincent v. Hughes Air West, Inc.,*
    557 F.2d 759 (9th Cir. 1977) ................................................................. 4

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ........................................................... 6, 17

*Watkins v. Hireright, Inc.,*
    No. 13-CV-1432-BAS-BLM, 2016 WL 5719813 (S.D. Cal. Sept. 30, 2016) .......... 6, 17

*Williams v. Brinderson Constructors, Inc.,*
    No. CV-15-02474 MWF (AGRx), 2017 WL 490901 (C.D. Cal. Feb. 6, 2017) ........... 21

## STATUTES

15 U.S.C. § 1681b(b)(2) .......................................................................... 9

15 U.S.C. § 1681n ................................................................................. 6

15 U.S.C. § 1681o ................................................................................. 9

28 U.S.C. § 1711 ................................................................................. 19

Class Counsel respectfully submits this memorandum in support of their request for an award of attorneys' fees of 25% of the Common Fund in the amount of $300,000, and costs totaling $12,875.69, and $10,000 in service awards to Named Plaintiffs.

## I.   PRELIMINARY STATEMENT

Court-appointed Class Counsel Glancy Prongay & Murray LLP ("GPM"), respectfully request that this Court grant their motion for an award of attorneys' fees in the amount of 25% of the Common Fund,[1] or $300,000. Class Counsel also seeks reimbursement of: (i) $12,875.69 in costs that Class Counsel reasonably and necessarily incurred in prosecution and resolving the Action; and (ii) $10,000 in service awards ($5,000 each) to Class Representatives Jacklyn Feist and Angelica Zimmer (together, "Plaintiffs").

As discussed more fully in Plaintiffs' Motion for Final Approval, the proposed Settlement provides exceptional relief: a $1,200,000 non-reversionary cash fund to be distributed *automatically* to all Class Members. There is no claims process. The proposed Settlement is the product of over two years of hard-fought litigation. Class Counsel's prosecution of this Action included, among other things: (a) conducting an extensive investigation of the claims asserted against Defendant, (b) researching and

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement (the "Stipulation") April 20, 2018 attached as Exhibit 1 to the Declaration of Mark S. Greenstone previously submitted in support of Plaintiffs' Motion for Preliminary Approval (the "Stipulation") (ECF No. 34-3).

preparing a detailed class action complaint based on this investigation; (c) litigating a motion to dismiss; (d) preparing an Early Neutral Evaluation ("ENE") statement and personally attending the ENE conference along with the Named Plaintiffs; (e) engaging in extensive written discovery and; (f) engaging in a mediation process overseen by a highly experienced third-party mediator, the Honorable Leo S. Papas (Ret.) of Judicate West, which involved written submissions concerning liability and damages, a full-day formal mediation session in San Diego, California, and months of follow-up negotiations and drafting to finalize the Stipulation and its ancillary documents.

In continuing with this litigation, Plaintiffs would have surely faced renewed challenges to their standing, in addition to numerous challenges to establishing liability and damages as well as to class certification. Thus, Plaintiffs faced years of potential litigation in this Court as well as possible appellate litigation in the United States Court of Appeals for the Ninth Circuit, and a real possibility that the case would yield little or no recovery after many years of costly litigation. Despite these risks, Class Counsel collectively worked 645 hours over the course of more than two years, all on a contingency basis with no guarantee of ever being paid. The two Named Plaintiffs likewise persevered in assisting with the prosecution of their claims through the ups and downs of litigation.

Class Counsel believe that an attorney fee award of 25% properly reflects the work performed, the many significant risks taken by Class Counsel, as well as the excellent result achieved. When examined under either the percentage of the fund or

lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the costs requested by Class Counsel are likewise reasonable in amount, and they were necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

## II.  FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Declaration of Mark S. Greenstone in support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement, and (II) Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Class Representative Service Awards ("Greenstone Declaration" or "Greenstone Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services Class Counsel provided for the benefit of the Class.[2]

## III.  THE COURT SHOULD APPROVE THE FEE REQUEST

### A.  A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

An attorney who maintains a suit resulting in the creation of a fund or benefit in

---

[2] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to, the concurrently filed Declaration of Mark S. Greenstone.

which others have a common interest is entitled to obtain reasonable fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").[3]  Indeed, it is well settled that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have  a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The Ninth Circuit has found that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is deeply rooted in case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1881); *Cent. R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885). In addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of people, and to discourage future misconduct of a similar nature.

In the Ninth Circuit, district courts retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-fund or lodestar method.  *See*

_____

[3] Unless otherwise indicated, all emphasis is added and quotations omitted.

*WPPSS*, 19 F.3d at 1295; *Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198, at *6 (S.D. Cal. Mar. 26, 2018). The percentage method is particularly appropriate in common fund cases where, as here, in an FCRA class action, "the benefit to the class is easily quantified." *Syed v. M-I LLC*, No. CV 1:14-742 WBS BAM, 2016 WL 310135, at *9 (E.D. Cal. Jan. 26, 2016) (quoting *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). "The Ninth Circuit has permitted courts to award attorney's fees using the percentage method 'in lieu of the often more time-consuming task of calculating the lodestar.' The court will thus adopt the percentage method here." *Syed*, 2016 WL 310135, at *9 (adopting percentage method in $1.6 million FCRA settlement and awarding attorneys' fees in the amount of 25%).

## B.   An Award of 25% of the Fund Created Is Reasonable in This Case

Although the ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the district court, the guiding principle in this Circuit is that a fee award should be "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Galicia*, 2018 WL 1470198, at *6 ("Regardless of whether the Court applies the percentage method or lodestar method to calculate attorneys' fees, 'the ultimate inquiry is whether the end result is reasonable' in light of all of the circumstances of the case"). The Ninth Circuit has approved a number of relevant factors, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the

awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Galicia*, 2018 WL 1470198, at *6; *Cifuentes v. CEVA Logistics U.S., Inc.*, No. 3:16-CV-01957-H-DHB, 2017 WL 4792425, at *6 (S.D. Cal. Oct. 23, 2017). As demonstrated below, application of these factors confirms the reasonableness of the requested fee.

### 1.    The Results Achieved and the Benefit Obtained for the Class

Courts have consistently recognized that the result achieved is a major factor to be considered in determining the reasonableness of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1050.

Class Counsel's efforts in this matter resulted in a non-reversionary Common Fund of $1.2 million for the benefit of the Class. ¶¶ 3; 25.  The Net Settlement Fund remaining after deduction of court approved fees, costs and service awards will be distributed *automatically*—Class Members need not submit a claim to be paid. ¶ 4. Plaintiffs sought statutory damages under the FCRA, which provides for damages of $100 to $1,000 for each willful violation of the statute. 15 U.S.C. § 1681n. ¶ 14.  On a per-person basis, the Settlement will provide Disclosure Class Members with a gross recovery of about $32 or about 32% of the minimum statutory damages. ¶ 4.  The small subset of Adverse Action Class Members will each receive an additional $150. ¶ *Id.*

This per person payout is in line with many of those achieved in approved FCRA settlements that raised similar claims, especially those entered into after the U.S.

Supreme Court agreed to hear *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ("*Spokeo*"). ¶ 4. *See, e.g., Nesbitt v. Postmates, Inc.*, No. CGC-15-547146 (Cal. Sup. Ct. Nov. 8, 2017) (disclosure class members received approximately $21.80 and adverse action class members received approximately $65.40); *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report); *Aceves v. Autozone Inc.*, No. 5:14-cv-2032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (final approval of FCRA settlement with gross recovery of $20 per disclosure class member); *Brown v. Lowe's*, 5:13-cv-00079, ECF No. 173 (W.D.N.C. Nov. 1, 2016) (granting final approval of a pre-adverse action claim in which the gross recovery was $60 per class member); *Patrick v. Interstate Mgmt. Co., LLC*, No. 8:15-cv-1252, ECF No. 42 (M.D. Fla. April 29, 2016) (final approval of FCRA disclosure claim where class members received $9 each); *Landrum v. Acadian Ambulance Serv., Inc.*, No. 14-cv-1467, ECF No. 37 (S.D. Tex. Nov. 5, 2015) (final approval of FCRA disclosure settlement of $10 per person); *Walker v. McClane/Midwest, Inc.*, No. 2:14-cv-04315, ECF No. 29 (W.D. Mo. Oct. 23, 2015) (final approval of FCRA settlement in which disclosure class members recovered $24).[4] In light of the risks that the Class would have faced had litigation continued, this is an

---

[4] The ratio between the amounts awarded to Class Members in the two Classes is also in line with other similar settlements. *See, e.g., Hunter v. First Transit, Inc.,* No. 09-cv-6178, ECF No. 79 (N.D. Ill. Sept. 9, 2011) (approving settlement which allocated higher payouts to individuals who were not hired based on their background reports).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

excellent recovery which supports Class Counsel's requested fees.

The outstanding nature of the results achieved is brought into even sharper focus when weighted against the many significant litigation risks that Plaintiffs faced. As discussed more fully below, a real possibility existed that Plaintiffs would receive nothing at all had they proceeded with this matter.

### 2.    The Risks of Continued Litigation

Continued litigation of this matter carried a number of very specific risks that could have resulted in no recovery for the Class. ¶¶ 25-26. Indeed, there were a number of novel and uncertain litigation issues in this case.

The standing issue loomed as an ever-present danger. ¶ 27. Although this Court denied Petco's motion to dismiss asserting that Plaintiffs lacked standing, the Court specifically noted that "Defendant may challenge Plaintiffs' claims in a motion for summary judgment if Plaintiffs cannot demonstrate a concrete injury in fact." ECF No. 16 at 6:1-2. Following the Supreme Court's decision in *Spokeo*, numerous similar FCRA cases were dismissed outright. *See, e.g., Lee v. Hertz Corp.*, No. 15-cv-04562-BLF, 2016 WL 7034060, at \*5 (N.D. Cal. Dec. 2, 2016); *Nokchan v. Lyft, Inc.*, No. 15-cv-03008(JCS), 2016 WL 5815287, at \*6 (N.D. Cal. Oct. 5, 2016). Petco would likely have renewed its argument that this Action should be dismissed as well.

It is also likely Petco would have challenged every aspect of class certification. ¶ 28. While Plaintiffs believe that their Disclosure Class claim would be certified, this was by no means guaranteed. Some courts have certified similar FCRA cases. *See, e.g.,*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 426 (E.D. Va. 2016) (certifying nationwide class of applicants under 15 U.S.C. § 1681b(b)(2)). However, some courts have denied certification in FCRA cases. *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140 (D. Ariz. Dec. 14, 2016), *reconsideration denied*, No. CV-14-02357-PHX-GMS, 2017 WL 131566 (D. Ariz. Jan. 13, 2017) (finding in FCRA stand-alone disclosure case that named plaintiff seeking only statutory damages did not meet typicality and adequacy elements of Rule 23 because as plaintiff did not represent putative class members with actual damages). Moreover, Defendant would likely argue that individual issues predominate over common issues relating to the Adverse Action Class claims. ¶ 28.

Plaintiffs also faced significant litigation hurdles with establishing liability. The issue of willfulness posed a significant risk of no recovery, as Petco would have surely contended that even if its online disclosure form violated the FCRA, the violation was not willful. ¶ 29. To recover statutory damages under the FCRA, Plaintiffs must prove not only that Defendant violated the FCRA, but also that Defendant's violations were willful. 15 U.S.C. §1681o. Willful violations include "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). *Safeco* explains that an employer acts recklessly if it adopts an interpretation of the FCRA which is "objectively unreasonable," as opposed to adopting a view which is ultimately found to be wrong, but which was not "objectively unreasonable." ¶ 30. Courts are still developing the law regarding online applications, and there is uncertainty

MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:16-cv-01369-H-RNB

regarding how to apply the statutory phrase "a document that consists solely of the disclosure" in the context of an online application. ¶ 29.

Plaintiffs also expect that Petco would have asserted an advice of counsel defense. ¶ 31. This potential defense posed a risk to Plaintiffs given that Petco was advised by one of the most experienced FCRA attorneys in the country, Rod Fliegel, whom Petco designated as a percipient expert witness. Moreover, the standard for the advice of counsel affirmative defense in FCRA litigation is undeveloped in Ninth Circuit case law, which adds to the uncertainty faced by Plaintiffs. *See Safeco*, 551 U.S. at 70 (suggesting that the advice of counsel *could* be a defense to the scienter element of FCRA claims, but declining to address the issue).

Absent a finding of willfulness, the Class would recover nothing, even if a violation of the FCRA is proven. *See Smith v. LexisNexis Screening Sols., Inc.,* 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict, holding that consumer reporting agency's conduct did not constitute a willful violation of the FCRA); *Domonoske v. Bank of America, N.A.,* 790 F. Supp. 2d 466, 476 (W.O. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment."). In light of this uncertainty, even if this Court concluded that Petco's disclosure form violated the FCRA, Plaintiffs still faced the hurdle of establishing willfulness as a prerequisite to statutory damages. ¶ 30.

In addition, Petco would have likely argued that Plaintiff Feist has no adverse action claim because she was not hired due to an issue with her social security number

verification, and that one out-of-circuit case, *Bickley v. Dish Network*, determined an issue related to social security number verification was not actionable under the FCRA. ¶ 32. *See* No. 3:10-cv-00678-H, 2012 WL 5397754, at *4 (W.D. Ky. Nov. 2, 2012) (response from consumer reporting agency indicating lack of a confident match between name and social security number provided not a consumer report subject to FCRA). While this case has no precedential value in the Ninth Circuit, demonstrating that its persuasive authority was inapplicable to the instant case posed another litigation hurdle.

To be sure, Plaintiffs would have vigorously opposed each of these arguments and believe that there is a substantial chance that most or all of these arguments would not be successful. Nevertheless, each of them was potentially fatal to Plaintiffs' claims. Further, in addition to lengthy and expensive additional discovery, even if Plaintiffs were to make it to trial and prevail, Defendants would undoubtedly appeal the decision to the Ninth Circuit and, if they lost there, could have sought *en banc* review from the Ninth Circuit or a writ of *certiorari* from the Supreme Court, or both. Such appeals would be time consuming, expensive and complex, and might lead to the reversal of any favorable verdict, thereby endangering any recovery by the Class. ¶ 33. In light of these risks, the Settlement is a favorable and reasonable resolution of this Action.

### 3.   The Financial Burden of Contingent Fee Representation and the Risk of Nonpayment

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a

factor in determining the appropriateness of counsel's proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005); *see also, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015); *WPPSS*, 19 F.3d at 1299-01. "Contingent fees compensate lawyers for the risk of nonpayment.  The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, No. 12-2339, 2013 WL 4082893, at *5-*6 (7th Cir. Aug. 14, 2013).

The risk of no recovery in complex cases like this one is real. As one court has recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy Inc. Sec. Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  For instance, in *Smith v. LexisNexis Screening Sols., Inc.,* 837 F.3d 604, 611 (6th Cir. 2016) the court reversed a jury verdict holding that consumer reporting agency's conduct constituted a willful violation of the FCRA. There, the Sixth Circuit concluded that "[a]lthough the jury could find that Lexis was negligent in compiling Smith's report, that is a far cry from being willful. In order to willfully violate the FCRA, a CRA's action must entail "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 610 (citing *Safeco*, 551 U.S. at 68).  The Circuit held, therefore, that "[t]he district court thus should have granted judgment as a matter of law with respect to the willfulness claim." *Id.*

In *Dreher v. Experian Info. Sols., Inc.,* 856 F.3d 337, 341 (4th Cir. 2017), the Fourth Circuit overturned a $10 million judgment because it concluded the district court lacked subject matter jurisdiction. The Circuit concluded that the plaintiff had "failed to demonstrate he has suffered a concrete injury sufficient to satisfy Article III standing, the district court's judgment is vacated, and this class action must be dismissed on jurisdictional grounds." *Id.* at 347.

Here, Class Counsel faced similar risks of non-payment. Class Counsel took this case on a contingency fee basis, and invested time and resources in this matter without any compensation to date. ¶ 51 . At all times, this case carried a very real possibility of an unsuccessful outcome and Class Counsel receiving no fees of any kind. ¶ 52 . At the time the complaint was filed, there were no obvious indications that a settlement would be reached or that the litigation would be successful. Further, continued litigation of this matter carried a number of very specific risks that could have resulted in no recovery for the Class and no compensation for Class Counsel. ¶¶ 26-33; 53. Therefore, although Class Counsel was confident in the strength of its case, it could not ignore the practical risk that there could be no recovery after many more years of costly litigation.

### 4.    A 25% Fee Award Is Consistent With the Market Rate in Similar, Complex, Contingent Litigation

Fees awarded in comparable cases assist in the determination of whether the requested fee is reasonable.  Here, Class Counsel requests a fee of 25% of the recovery achieved, the "benchmark" often referenced by courts in the Ninth Circuit. *Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Galicia*, 2018 WL 1470198, at *7 (recognizing the 25% benchmark); *Cifuentes*, 2017 WL 4792425, at *6 (same).

The 25% percent request is in line with Ninth Circuit precedent. *See, e.g., Syed*, 2016 WL 310135, at *9 (awarding class counsel's request for $400,000 in attorney's fees, which constitutes 25% of the total $1.6 million FCRA settlement fund). Indeed, fees *greater than* the requested 25% have been routinely granted in comparable FCRA cases. *See*, *e.g*., *Ford v. CEC Entm't Inc.*, No. 14CV677 JLS (JLB), 2015 WL 11439033, at *6 (S.D. Cal. Dec. 14, 2015) (approving 33% of $1.75 FCRA settlement); *Postmates*, No. CGC-15-547146 (Cal. Supr. Ct. Nov. 8, 2017) (awarding one-third of $2.5 million FCRA settlement); *Flores v. Express Servs., Inc.,* No. 2:14-cv-03298, 2017 WL 1177098 (E.D. Pa. Mar. 30, 2017) (awarding about 33% of $5.75 million FCRA settlement); *Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017) (awarding one-third of $15 million settlement in FCRA stand-alone disclosure case); *Smith v. Res-Care, Inc.,* No. CV 3:13-5211, 2015 WL 6479658, at *8 (S.D.W. Va. Oct. 27, 2015) (awarding 33% of $840,000 FCRA settlement in stand-alone disclosure case); *Johnson v. Midwest Logistics Sys. Ltd.,* No. 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (awarding 33% of $450,000 FCRA settlement); *Serrano v. Sterling Testing Sys., Inc.,* 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010) (awarding roughly

33% of $950,000 FCRA settlement). Accordingly, Class Counsel's fee request is in line with, and even *lesser than*, with other comparable cases and should be approved. ¶ 54.

### 5. The Skill Required and the Quality and Efficiency of the Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage*, 2005 WL 1594403, at \*19. Class Counsel has a well-established reputation for expertise in prosecuting consumer class actions. See ¶ 48 & Ex. C (resume of Glancy Prongay & Murray, LLP). From the outset of this case, Class Counsel engaged in a concerted effort to obtain the maximum recovery for the Class. Class Counsel devoted a substantial amount of its own money and attorney and staff hours and marshalled considerable resources for the prosecution of this matter. ¶¶ 42-45; 58-59. Because of Class Counsel's diligent efforts on behalf of the Class and Class Counsel's skill and reputation, Class Counsel was able to negotiate a favorable settlement under difficult and challenging circumstances at a relatively early stage of the case, thus enabling Class Members to receive compensation sooner than had this case dragged on for several more years as often is the case in class action litigation. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Such quality, efficiency, and dedication should be rewarded.

The quality of representation provided by Class Counsel is reflected in its substantial investment of time in the investigation of this matter. ¶¶ 42-45. Further,

Class Counsel vigorously opposed Defendant's motion to dismiss.  ¶¶ 15; 42.  Class Counsel also engaged in significant discovery. ¶¶ 19; 42. Finally, the quality of representation is reflected in the $1.2 million all-cash settlement that represents 32% of minimum statutory damages that could have been obtained had Plaintiffs prevailed at trial – in a case where Defendant aggressively disputed every element of Plaintiffs' claims and the potential for recovering nothing was stark.  ¶¶ 25; 50.

In evaluating the quality of Class Counsel's work, it is also appropriate to consider the quality of opposing counsel and the resources opposing counsel devoted to this case. *In re Heritage*, 2005 WL 1594403, at *20 ("The Court also notes that the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work."). Defendant in this case was represented by a team of attorneys from Wilson Turner Kosmo LLP, a highly respected San Diego law firm with significant class action experience.  Defendant's Counsel aggressively litigated all aspects of this case.  ¶ 50. Defendant zealously briefed its motion to dismiss, responded to discovery, aggressively and painstakingly negotiated the parameters of electronic discovery and the protective order, submitted a mediation statement and participated in an all-day, in person mediation with Judge Papas. ¶ *Id.*

Accordingly, the skill, quality, and efficiency of Class Counsel's representation weighs in favor of approval of Class Counsel's request for attorneys' fees.

## C.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Class Counsel have a lodestar of $351,084 based on 644.1 hours of work, which is *less* than the $300,000 in requested fees. ¶¶ 42-43. Although Class Counsel seeks approval of a fee based on a percentage of the recovery, the "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. A lodestar crosscheck here supports the reasonableness of Class Counsel's requested fees.

The lodestar method "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases.  *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013). The court then applies an appropriate multiplier to the lodestar number to account for these factors.

As noted, Class Counsel's lodestar in this case is $351,084 based on 644.1 hours of work.  ¶ 42.  Therefore, the requested fees of $300,000 yield a "negative" multiplier of 0.85.  ¶ 43.   The Ninth Circuit and district courts within it, including this Court, have regularly approved multipliers far higher than this. *See Vizcaino*, 290 F.3d at 1052-54

(approving a 3.65 multiplier); *Galicia*, 2018 WL 1470198, at *7 (applying multiplier of 2.687 to the lodestar, and recognizing that it is "well within the 1 to 4 multiplier range commonly found to be appropriate in common fund cases"); *Cifuentes*, 2017 WL 4792425, at *7 (noting that "[a] multiplier of three is well within the accepted range for common fund cases where class counsel has taken the case on a contingency fee arrangement") (collecting cases). The lodestar cross-check thus supports approval of the 25% fee requested.

Moreover, Class Counsel's lodestar is the product of reasonable hourly rates and a reasonable amount of time expended, particularly in light of the complexity and stage of this matter. ¶ 46. Class Counsel's hourly rates have been regularly approved in many class action settlements within the Ninth Circuit, including by the Honorable Dana M. Sabraw on October 18, 2016 in the case entitled *Peterson v. CJ America, Inc.*, No. 14-2570 (S.D. Cal.), Docket No. 60, using a percentage of the common fund with a lodestar cross-check; the Honorable Edward M. Chen on August 30, 2016 in the case entitled *Sciortino, et al., v. Pepsico, Inc.*, No. 14-0478 (N.D. Cal.), Docket No. 163, using a lodestar cross-check; and the Honorable Christina A. Snyder on May 5, 2016 in the case entitled *Sateriale, et al., v. R.J. Reynolds Tobacco Co.*, No. 09-08394 (C.D. Cal.), Docket No. 233, using the lodestar-multiplier approach.  Similarly, the Honorable John A. Kronstadt on January 2014 in the case entitled, *Pappas v. Naked Juice Co.*, No. 11-cv-08276 (C.D. Cal.), Docket No. 184, awarded fees using the lodestar-multiplier approach in connection with the settlement of a class action, and on May 4, 2015, the

Honorable Jon S. Tigar approved GPM's rates in *Lilly v. Jamba Juice Company, et al.*, No. 13-cv-02998 (N.D. Cal.), Docket No. 75.[5]

Accordingly, a lodestar crosscheck further supports Class Counsels' requested fees.

## D. The Reaction of the Class Supports Approval of the Requested Attorneys' Fees

The deadline to object to or opt out of the Settlement is approximately one week away. To date, ***no one*** has objected, and only 4 of the 35,681 Class Members have opted out. ¶ 55; Declaration of Thalia Rojas ("Rojas Decl.") ¶ 10-11. Likewise, no federal or state official who received notice under the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.*, has objected to the fee request or any other aspect of the Settlement. ¶ 39; Rojas Decl. ¶ 11. This positive reaction also strongly supports approval of Class Counsel's request for fees and costs.[6] *In re Skilled Healthcare Grp., Inc. Sec. Litig.*, No. CV-09-5416 DOC (RZx), 2011 WL 280991, at *4 (C.D. Cal. Jan. 26, 2011) (noting that the fact that "no class member objected to a . . . attorneys fee award" weighed in favor of approving the requested fee award). "It is established that the absence of a large number

---

[5] Moreover, Class Counsel's rates are reasonable based on the market rates in the forum in which this Court sits. *Lewis v. Cty. of San Diego*, No. 13-CV-02818-H-JMA, 2017 WL 6326972, at *9 (S.D. Cal. Dec. 11, 2017). For example, in *Ford*, 2015 WL 11439033, at *6, the Court approved Class Counsel's hourly rates in an FCRA case where "[t]he stated hourly rates of the attorneys comprising Class Counsel range from $370 per hour for the most junior lawyer to $695 per hour for the three most senior lawyers."

[6] The last day to object to or opt out of the Settlement is September 24, 2018. Class Counsel will file an status update once this period has closed.

1
2
3
4

of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members."   *DIRECTV*, 221 F.R.D. at 529.[7]

5
6
7
8
9
10
11
12
13
14
15
16
17

Here, the Class was notified of the Settlement and the request for attorneys' fees and reimbursement of costs by the Notice distributed via first-class mail. ¶¶ 36-38. The Notice is also posted on the settlement website and accessible 24 hours a day and 7 days a week, which informed potential Class Members that Class Counsel would request up to 25% of the Common Fund in fees and up to $15,725.26 in costs. ¶ 38. Moreover, the Class Representatives do not oppose the request and have concluded that Class Counsel's requested fee is fair and reasonable. ¶ 49. The positive reaction of the Class Representatives and a large class of over 37,000 individuals who were fully informed of Class Counsel's requested fees and costs months ago weighs heavily in favor of approving Class Counsel's request.  ¶ 55.

18
19
20
21
22
23
24
25
26
27
28

---

[7] Even if some objections are received, courts routinely approve settlements if they otherwise meet the fairness requirements. *See, e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) (approving settlement where 90,000 class members were noticed and only 45 objected); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 WL 12732462, at *24 (C.D. Cal. May 29, 2015) (approving settlement even though 15 class members filed objections); *In re Mfrs. Life Ins.*, No. 1109, 96-CV-230 BTM(AJB), 1998 WL 1993385, at *7 (S.D. Cal. Dec. 21, 1998) ("[A] minuscule number of objectors is another factor favoring approval."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (adequacy of settlement "persuasive" even when 16% of class objected).

## IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Williams v. Brinderson Constructors, Inc.*, No. CV-15-02474 MWF (AGRx), 2017 WL 490901, at *4 (C.D. Cal. Feb. 6, 2017) (same); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *10 (C.D. Cal. Oct. 25, 2016) (same).

Here, Class Counsel requests the reimbursement of $12,875.69 in out-of-pocket costs. ¶ 56. The expenses for which reimbursement is sought are the types of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund.  The expenses incurred were of the type necessary for the prosecution of this case. ¶¶ 56-60.  *See, e.g., Galicia*, 2018 WL 1470198, at *7 (approving expenses for mediation, litigation services, copies, and travel).

A substantial portion of the expenses incurred relate to mediation.  ¶ 59.  Other expenses included computerized legal and factual research charges, and travel expenses which were incurred in connection with attendance at the mediation, and settlement hearings for this matter. ¶ 59. Notably, the requested Costs are less than the maximum amount of potential expenses disclosed to the Class in the Notice.  ¶ 60.

## V.   THE CLASS REPRESENTATIVE SERVICE AWARDS ARE REASONABLE

"The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial

and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Cifuentes*, 2017 WL 4792425, at *7 (quoting *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013)).

In assisting with the successful prosecution of this case, the Named Plaintiffs have diligently performed their duties as class representatives. ¶ 61. As detailed in the concurrently filed Declaration of Jacklyn Feist ("Feist Decl.") and Declaration of Angelica Zimmer ("Zimmer Decl."), Plaintiffs Feist and Zimmer have expended substantial time and effort representing the Class.  Among many other things, Named Plaintiffs: (1) assisted Class Counsel with the initial evaluation of this case and obtained their personnel files via a pre-litigation request per Labor Code Section 1198.5; (2) conferred with Class Counsel periodically about the claims asserted in this case; (3) searched for and provided documents and information whenever requested by Class Counsel to assist with conducting this case; (4) reviewed the allegations in the operative complaints, taking the time necessary to familiarize themselves with the basic claims and allegations asserted; (5) prepared for and personally attended the ENE conference; (6) communicated with Class Counsel prior to the mediation and during the settlement negotiations; (7) reviewed the terms of the settlement agreement and conferred with Class Counsel about the benefits and risks of further litigation compared to the value of the settlement; and (8) remain committed to dedicating the time and effort necessary to

represent the Class in this case through the final resolution of the matter. *Feist Decl.* ¶ 2; *Zimmer Decl.* ¶ 2. In addition, Named Plaintiffs have taken on the reputational risk associated with involving themselves in a lawsuit with an employer. *Id.*

Plaintiff Feist took a day off work to travel from Orange County to personally attend the ENE, and Plaintiff Zimmer took two days off work to travel to San Diego from Sacramento. *Feist Decl.* ¶ 3; *Zimmer Decl.* ¶ 3.

These are precisely the types of activities that support awarding reimbursement of expenses to class representatives. *Cifuentes*, 2017 WL 4792425, at *7 (awarding representative plaintiff $7,500 because plaintiff had protected the interests of the class by participating in several hours of in-person and telephonic interviews, reviewing counsel's pleadings, and assisting counsel with other aspects of the case); *Galicia*, 2018 WL 1470198, at *7 (awarding representative plaintiff service award of $7,500 for actively participating in the litigation since its inception, providing class counsel with critical information regarding the defendant's practices, responding to discovery requests, and conferring with class counsel about mediation and the proposed settlement).

Named Plaintiffs and their counsel respectfully submit that $5,000 for each Plaintiff ($10,000 total) for their considerable time and effort for the benefit of the Class, is reasonable and appropriate. *See, e.g.*, *Watkins v. Hireright, Inc.*, No. 13-CV-1432-BAS-BLM, 2016 WL 5719813, at *4 (S.D. Cal. Sept. 30, 2016) (approving $10,000 incentive award to class representative in FCRA case); *Postmates,* No. CGC-15-547146

(Cal. Supr. Ct. Nov. 8, 2017), Order at 2 (approving service awards ranging from $6,500 to $3,500 for class representatives in FCRA litigation); *Rhom v. Thumbtack, Inc.*, No. 16-CV-02008-HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) (approving service award of $5,000 for class representative in FCRA case and recognizing that $5,000 is "presumptively reasonable" for service awards); *Carter v. McDonald's Restaurants,* No. EDCV-15-01531-MWF (JCx), 2017 WL 5634300, at *7 (C.D. Cal. Mar. 15, 2017) (approving service award of $10,000 for FCRA class representative).

In addition, the Notice advised Class Members that Named Plaintiffs may seek service awards related to their representation of the Class from the Common Fund in an amount not to exceed $5,000 each and, to date, there have been no objections.  ¶¶ 36; 38.

## VI.   CONCLUSION

For the foregoing reasons, as well as those stated in the Motion for Final Approval of Class Action Settlement and the Greenstone Declaration, Class Counsel respectfully requests that the Court award attorneys' fees of 25% of the Common Fund, and total costs of $12,875.69, and $10,000 in service awards to Named Plaintiffs.

DATED:  September 18, 2018          GLANCY PRONGAY & MURRAY LLP


By:   */s/ Mark S. Greenstone*
Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiffs and the Class*