UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKLYN FEIST, individually and on behalf of all others similarly situated; and ANGELICA ZIMMER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PETCO ANIMAL SUPPLIES, INC.,<br><br>Defendants. | Case No.: 3:16-cv-01369-H-MSB<br><br>**ORDER**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT; and**<br><br>**(3) APPROVING PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENT**<br><br>[Doc. Nos. 41, 42] |

On September 18, 2018, Plaintiffs filed a motion for final approval of class action settlement and a request for attorneys' fees, costs, and class representative service awards. (Doc. Nos. 41, 42.) On November 16, 2018, the Court held a hearing on the motions. (Doc. No. 47.) Mark S. Greenstone appeared on behalf of Plaintiffs and Frederick W. Kosmo, Jr. appeared on behalf of Defendant. (Id.) For the following reasons, the Court grants both motions.

## Background

Petco Animal Supplies, Inc. ("Defendant") is a major national retailer that primarily sells pet care products and services. Angelica Zimmer ("Zimmer") is a former Petco employee, and Jacklyn Feist ("Feist") is a former Petco job applicant (collectively, "named plaintiffs"). (Doc. No. 36, Second Amended Complaint, ¶¶ 30–35.) Plaintiffs allege that Defendant obtained and reviewed consumer reports detailing their financial histories after Plaintiffs applied for jobs at Defendant's stores, without first providing Plaintiffs the notice required by the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). (Id. ¶¶ 30–35, 51.) Zimmer was hired by a Petco store and worked there for roughly five months. (Id. ¶ 35.) Feist was not hired, allegedly because of adverse information on her consumer report. (Id. ¶ 33.) Feist alleges that she was not properly notified that Defendant would be reviewing her consumer report and was thus "deprived of an opportunity to review and challenge the report upon which . . . her denial of employment was based." (Id.)

On May 5, 2016, Plaintiffs filed this class action in the San Diego County Superior Court. (Doc. No. 1-2.) They asserted three different claims for violations of FCRA and sought to represent a class of "All persons regarding whom Defendant procured or caused to be procured a consumer report for employment purposes during the period from May 1, 2014 through December 31, 2015" ("Disclosure Class"), including a proposed subclass of "[a]ll persons regarding whom Defendant took adverse action subsequent to procuring a consumer report and did not receive a pre-adverse action notification letter during the period May 1, 2014 through December 31, 2015" ("Adverse Action Subclass"). (Doc. No. 36 ¶ 54.) On June 6, 2016, Defendant removed the action to this District on the basis of federal question jurisdiction. (Doc. No. 1.) Defendant moved to dismiss the complaint for failure to state a claim and lack of standing on July 15, 2016, (Doc. No. 7-1), but the Court denied the motion on November 22, 2016. (Doc. No. 16.) Defendant answered the complaint on December 22, 2016. (Doc. No. 17.)

///

On January 18, 2018, the parties notified the Court that they had reached a global settlement following mediation before the Honorable Leo S. Papas (Retired), a former Magistrate Judge of this Court. (Doc. No. 28.) After further negotiations, Plaintiffs moved for preliminary approval of the parties' class settlement on April 20, 2018. (Doc. No. 34.) The Court granted preliminary approval of the class settlement. (Doc. No. 39.) On September 18, 2018, Plaintiffs filed a motion for final approval of class action settlement and a request for attorneys' fees, costs, and class representative service awards. (Doc. Nos. 41, 42.)

Under the proposed settlement, Defendant will pay $1,200,000 to establish a nonreversionary settlement fund to resolve the litigation. (See Doc. No. 34-3, Proposed Settlement, at 7.) The settlement allocates $10,000 as an incentive award for the lead Plaintiffs, $300,000 for attorney fees, up to $15,725.26 to cover costs of suit, up to $114,028.88 to pay the settlement administrator, and the remainder to participating class members. (Id.; Doc. No. 41-1 at 11; see Doc. No. 45-1 ¶ 12.) The estimated 37,279 members of the Disclosure Class will each receive roughly $20, while the estimated 52 members of the Adverse Action Subclass will receive an additional $150. (Doc. No. 41-1 at 7.) In exchange for these payments, Defendant will be released from "all claims based on the failure to provide a proper disclosure and/or obtain a proper authorization and/or provide a pre-adverse action notification letter, in connection with an employment-related background check under the FCRA and all related, analogous or corresponding federal or state laws, which any Participating Class Member has ever had, or hereafter may claim to have, against the Released Parties related to consumer reports procured by Defendant during the period from May 1, 2014 through December 31, 2015." (Doc. No. 34-3 at 12, 26–27.)

Defendant provided notice to 35,681 class members constituting 95% of the total class. (Doc. Nos. 42-2 ¶ 37; 45-1 ¶ 9.) The case administrator posted the notice on the settlement website accessible 24 hours per day and 7 days per week to potential class members. (Doc. No. 42-2 ¶ 38.) In addition, the case administrator established a toll free

number, fax number, e-mail address, and mailing address to accommodate potential class member inquiries. (Id.) As of September 18, 2018, there have been no objections and four timely requests for exclusion were received. (Id. ¶ 38.) Non-objecting class members will be paid automatically, without need to file a claim. (Id. ¶ 4.) Any unclaimed funds will be donated to the National Consumer Law Center as cy pres recipient. (Doc. No. 40 at 2.)

## Discussion

### I. Class Certification

A class may be certified under Federal Rule of Civil Procedure 23(a) if: (1) the class is so numerous that joinder of all members individually is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interest of all members of the class. Furthermore, Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In its order certifying the class for settlement purposes, the Court determined that the class met the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. No. 39.) The class includes all individuals who applied for jobs at Petco stores during the class period and for whom Petco reviewed consumer reports. (Id. at 4.) The Adverse Action Subclass includes those members of the Disclosure Class who were subject to an adverse employment action as a result of the information contained in their consumer reports. (Id.)

The settlement class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs estimate that the Disclosure Class exceeds 37,000 members, while the Adverse Action Subclass contains roughly 52 members. (Doc. No. 34-1 at 7.) "Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and

will find that it has not been satisfied when the class comprises 21 or fewer." Nunez v. BAE Sys. San Diego Ship Repair Inc., 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017); see also Bee, Denning, Inc. v. Capital Alliance Group, 310 F.R.D. 614, 624 (S.D. Cal. 2015); Gomez v. Rossi Concrete, Inc., 270 F.R.D. 579, 588 (S.D. Cal. 2010). Accordingly, the proposed classes meet the numerosity prerequisite in this case.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). Here, whether Defendant provided the proposed class members with adequate FCRA notice implicates numerous common questions of law and fact. See, e.g., Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (finding commonality requirement satisfied for FCRA settlement class based on questions of "where [defendant] violated the FCRA by using [a form] to obtain consent from prospective and/or current employees to procure consumer reports for employment purposes"); Roe v. Frito-Lay, Inc., No. 14-cv-00751-HSG, 2016 WL 4154850, at *3 (N.D. Cal. Aug. 5, 2016) ("The [c]ourt finds that the proposed class satisfies the commonality requirement because, at a minimum, [d]efendant's alleged policies and practices concerning provision of a pre-adverse action notice as required by the FCRA implicate class members' claims as a whole."). Accordingly, the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw.

v. Falcon, 457 U.S. 147, 156 (1982). Here, Zimmer suffered the same alleged injury as the Disclosure Class—Petco reviewed her consumer report without providing adequate FCRA notice. Feist suffered the same alleged injury as the Adverse Action Subclass—her offer of employment was rescinded because of the information contained in her consumer report, and she was not given an opportunity to correct any false information in the report. The Court accordingly finds the typicality requirement satisfied.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. Here, there do not appear to be any conflicts of interest between Plaintiffs and the absent class members. Plaintiffs and their counsel have vigorously prosecuted the interests of the class, and class counsel has extensive experience in complex class action litigation. (See Doc. No. 34-2 ¶¶ 12–17.) Accordingly, Plaintiffs and their counsel are adequate representatives of the proposed class.

The settlement class also meets the predominance and superiority requirements of Rule 23(b)(3). The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 594 (1997)). Here, the significant common issue in this case is whether Defendant provided adequate FCRA notice to the class members before obtaining their consumer reports. Moreover, the legal remedies for the class members and subclass members are the same—monetary damages, which differ only based on whether adverse action was taken as a result of the information in the class members' consumer reports. Accordingly, the Court concludes that the issues common to the proposed class are significant and predominate over individual issues. See Singleton, 976 F. Supp. 2d at 677 (predominance satisfied for FCRA settlement class where the "'Applicant Class' would have to show that [defendant] violated FCRA by procuring or causing to be procured a consumer report based on a . . . form that prospective applicants

complete" and the "'Adverse Action Class' would need to establish that [defendant] took an adverse employment action against prospective and current employees without sending a pre-adverse action notice and/or copy of the consumer report on which the adverse action was taken").

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Moreover, any class member who wanted to pursue an individual claim could elect not to participate in the settlement agreement. Thus, the superiority requirement is met here.

Accordingly, the Court certifies the following settlement class:

> All persons regarding whom Defendant procured or caused to be procured a consumer report for employment purposes during the period from May 1, 2014 through December 31, 2015. Included in the Settlement Class is a subclass consisting of those against whom Petco took an adverse action subsequent to procuring a consumer report and did not receive a pre-adverse action notification letter.

## II. Settlement

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, a court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the

proposed settlement. Id. "In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference "to the private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel. Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

A. The Strength of Plaintiffs' Case and Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and they would continue to do so if the settlement failed to receive final approval. (Doc. No. 41-1 at 16–22.) The disputed factual and legal issues would be complex and costly to resolve at trial. (Id.) Both sides have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof, and the general difficulties and delays of litigation. (Id. 16–22, 26.) These considerations led the parties to conclude that a timely settlement would be best for everyone involved. (See id. at 26.) See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (internal quotation marks and citation omitted). The Court concludes that the strength of the parties' positions as well as the risk of further litigation weigh in favor of approving the settlement.

/ / /

/ / /

B. The Settlement Amount

The estimated total value of benefits to the class is $793,274.74, with each class member receiving one of two compensation levels based on whether they were subject to an adverse employment action. (Doc. No. 34-1 at 7.) The average recovery for each of the roughly 37,000 Disclosure Class members will be $20, while the average recovery for the roughly 52 Adverse Action Subclass members will be $170. (Doc. No. 41-1 at 7.) Courts have approved similar FRCA class settlements measured on a per-class member basis. See e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 454 (C.D. Cal. 2014) (holding that, because each class member could have recovered between $100 and $1000, a $5 or $30 settlement award for each member's FCRA claim was "not a de minimis amount"); Moore v. Aerotek, Inc., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (approving a FRCA class settlement with per class member payments of between $13–$80).

This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel. Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

C. The Extent of Discovery Completed and Stage of Proceedings

The parties have litigated this case for nearly two years. This settlement follows significant discovery, which included exchange of initial disclosures, comprehensive sets of interrogatories, and document requests, as well as substantial discussions between the parties concerning the relative strengths of Plaintiffs' claims and Defendant's defenses. (Doc. No. 42-2 ¶¶ 19–20.) Class Counsel analyzed Defendant's online application and disclosure form, and obtained the named plaintiffs' personnel files. (Id. ¶ 4.) In addition, the parties participated in a formal mediation conducted by the Honorable Leo Papas (Retired). (Id. ¶ 21.) Accordingly, the parties' significant investigation, discovery, and settlement discussions weighs in favor of granting final approval of the settlement. See

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (holding that class action settlements are appropriate if "the parties have sufficient information to make an informed decision about settlement").

### D. The Experience and Views of Counsel

Class counsel has extensive experience acting as class counsel in the class action litigation field. (Doc. No. 42-5.) Class counsel recommends that the settlement is both fair and adequate, a factor that weighs in favor of granting approval. (Doc. No. 42-2 at 7, 25.) See Staton, 327 F.3d at 959.

### E. The Reaction of the Class Members to the Proposed Settlement

As of September 18, 2018, there have been no objections and five timely requests for exclusion were received.[1] (Doc. No. 46 ¶¶ 2–3.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004). The complete lack of objections is indicative of the adequacy of the settlement. Accordingly, the reaction of the class members weighs in favor of granting final approval.

### F. Collusion

The collusion inquiry addresses the possibility that the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Staton, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The $5,000 incentive award ($10,000 total) for the named plaintiffs does not appear to be the result of collusion. The Court evaluates incentive awards using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree

---

[1] A list of the individuals who have opted out of the agreement is provided in Doc. No. 46-1, Exhibit A.

to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" Id. at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). The named plaintiffs have protected the interests of the class by engaging in investigation and discovery, attending an early neutral evaluation conference, and assisting counsel with other aspects of the case. (Doc. Nos. 42-1 at 28–29; 42-6 ¶ 2; 42-7 ¶ 2.) Therefore, the $5,000 award ($10,000 total) for the named plaintiffs appears to be reasonable in light of their efforts in this litigation.

Additionally, the attorneys' fees do not appear to be the result of collusion. Plaintiff's counsel may simultaneously negotiate the merits of the action and attorneys' fees. Staton, 327 F.3d at 971. The attorneys' fees and litigation costs sought by Plaintiff's counsel are reasonable under the circumstances.

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 960. Accordingly, the Court grants Plaintiff's motion for final approval of the settlement.

### III. Cy Pres Recipient

In the Court's order preliminarily approving the class settlement, the Court noted that the parties failed to designate a cy pres recipient. (Doc. No. 39 at 10.) The Court preliminarily approved the class action settlement on the condition that the parties submit a cy pres recipient that complies with Ninth Circuit case law. (Id.) On June 25, 2018, the parties jointly designated the National Consumer Law Center ("NCLC") as the cy pres recipient. (Doc. No. 40.) The Court approves the designation.

The parties may designate a cy pres recipient so long as the recipient qualifies as "the next best distribution" to giving the funds to class members. Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). "There must be a driving nexus between the plaintiff class and the cy pres beneficiaries." Id. (citation omitted). As such, a cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]" Id. (quotation marks and citations omitted). Here, the parties have selected NCLC as a cy

pres recipient of any residual remaining in the reserve fund. (Doc. No. 40.) NCLC shares in the objectives of the FCRA by training and advising advocates on consumer legal issues, working on state and federal commissions and legislatures concerning consumer legal issues, and publishing treatises on fair credit reporting that include extensive discussions on issues related to the FCRA. (Doc. No. 40-1 ¶¶ 4, 10.) Accordingly, there is an appropriate nexus between the designated cy pres recipient and the Plaintiff class.

## IV. Attorneys' Fees, Expenses, and Incentive Payment to Class Representative

With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark" for common fund cases. Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). Regardless of whether a court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Here, Plaintiffs have requested an award of $300,000 in attorneys' fees. The requested amount of attorneys' fees is 25% of the total settlement fund of $1,200,000. (Doc. No. 42-1 at 7.) The overall award Plaintiffs' counsel achieved for the class was quite favorable, and the risks of continuing to litigate this case were real and substantial. Moreover, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation. (Doc. No. 42-2 ¶ 51.) The request for attorneys' fees in the amount of 25% of the common fund follows the Ninth Circuit's benchmark. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of

acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."). Finally, class counsel has represented that the fees calculated under the lodestar method would be $351,084. (Doc. No. 42-2 ¶ 42.) Thus, the amount class counsel requests is less than what class counsel would receive under the lodestar method. See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944–45 (9th Cir. 2011) (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method). Accordingly, the Court concludes that the request for fees is reasonable and grants class counsel $300,000 in attorneys' fees.

Plaintiff has represented to the Court that class counsel has incurred litigation expenses in the amount of $12,875.69. (Doc. No. 42-2 ¶ 58.) After reviewing counsel's declaration regarding expenses, the Court concludes that the request for $12,875.69 in litigation expenses is reasonable and grants class counsel's request for these fees.

Finally, the $5,000 incentive payment for each of the named plaintiffs ($10,000 total) is reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted). After reviewing these factors, the Court concludes that the requested incentive payment is reasonable. The $10,000 total award is well within the acceptable range awarded in similar cases. See Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000). The named plaintiffs have protected the interests of the class by engaging in investigation and discovery, attending an early neutral evaluation conference, and assisting counsel with other aspects of the case. (Doc. Nos. 42-1 at 28–29; 42-6 ¶ 2; 42-7 ¶ 2.) Accordingly, the Court approves the $5,000

incentive payment for each of the named plaintiffs for a total of $10,000.

## Conclusion

The Court has jurisdiction over the subject matter of this action and all parties to the action, including all settlement class members. The Court certifies the settlement class and grants final approval of the settlement. All persons who satisfy the class definition, except those class members who timely and validly excluded themselves from the class, are settlement class members bound by this judgment. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, including the Due Process Clause.

The Court grants class counsel $300,000 in attorneys' fees and $12,875.69 in expenses. The Court grants class representatives Zimmer and Feist each an incentive payment of $5,000 for a total of $10,000. The attorneys' fees, expense awards, and incentive payment will be paid out of the settlement fund created by Defendant Petco.

Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the settlement and all matters arising thereunder. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. The Court dismisses the action with prejudice, and no costs shall be awarded other than those specified in this order or provided by the settlement agreement. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

Dated: November 16, 2018

_____
Hon. Marilyn L. Huff
United States District Judge